# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| MERITAGE HOMES OF TEXAS, LLC, MERITAGE HOMES OF FLORIDA, INC., and MERITAGE HOMES CORPORATION,<br>*Plaintiffs*<br><br>v.<br><br>AIG SPECIALTY INSURANCE COMPANY, f/k/a CHARTIS SPECIALTY INSURANCE COMPANY, f/k/a AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>Case No. 1:22-cv-01375-DAE |

## ORDER

Before the Court are Defendant/CounterPlaintiff AIG Specialty's Motion for Protective Order and Alternative Motion to Quash or Modify Subpoenas with Incorporated Memorandum of Law, filed November 22, 2023 (Dkt. 25); Plaintiffs' Response to Defendant's Motion for Protective Order, filed December 5, 2023 (Dkt. 27); Defendant/CounterPlaintiff AIG Specialty's Reply Memorandum in Support of Motion for Protective Order and Alternative Motion to Quash or Modify Subpoenas, filed December 19, 2023 (Dkt. 30); and Plaintiffs' Sur-Reply Brief, filed January 10, 2024, by leave of Court (Dkt. 36). By Text Order entered November 27, 2023, the District Court referred the motion to this Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I. Background

Meritage Homes of Texas, LLC, Meritage Homes of Florida, Inc., and Meritage Homes Corporation (collectively, "Meritage") bring this insurance coverage lawsuit against their general

liability insurer AIG Specialty Insurance Company, f/k/a Chartis Specialty Insurance Company, f/k/a American International Specialty Lines Insurance Company ("AIG").[1] Meritage is a residential homebuilder that builds houses and condominiums throughout the United States, including in Texas and Florida. From 2002 to 2018, Meritage carried general liability insurance through twelve policies issued by AIG ("Policies").[2] Second Amended Complaint, Dkt. 34 ¶ 14.

Beginning in late 2017, homeowners in Texas and Florida began to allege that Meritage installed defective stucco on the exterior of houses and to assert construction defect claims under the Texas Residential Construction Liability Act and the Florida Construction Defect Statute ("Underlying Claims"). *Id.* ¶¶ 8-11. Meritage alleges that more than 1,000 Underlying Claims have been asserted against it, and that it has settled about 500 of those claims. *Id.*

Meritage tendered the Underlying Claims to AIG. Meritage alleges that AIG responded by issuing reservation of right letters as to several threshold requirements under the Policies' "Excess Liability Over Insured's Self-Insured Retention" provision, including "(1) satisfaction of the applicable self-insured retention ('SIR') through payment of 'loss', (2) the existence and timing of 'property damage', and (3) the existence and number of 'occurrences.'" *Id.* ¶ 15. AIG states that the Policies have an "each occurrence" limit of $25 million and a products-completed operations aggregate limit of $25 million. Dkt. 25 at 2. AIG contends that the Policies apply only in excess of the SIR and cover sums that the insured becomes legally obligated to pay as damages because of property damage to which the insurance policy applies. *Id.*

---

[1] Meritage Texas is an Arizona limited liability company. Meritage Florida is a Florida corporation with its principal place of business in Arizona. Meritage Corp. is a Maryland corporation with its principal place of business in Arizona. AIG is an Illinois corporation with its principal place of business in New York. Meritage invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332.

[2] Neither party submits the Policies.

## A. Coverage Litigation

In this declaratory judgment and coverage lawsuit, Meritage alleges that "AIG has breached its contractual obligations to Meritage by denying coverage and refusing to participate in the settlement of underlying claims, requiring Meritage to fund AIG's owed portion of such settlements." Dkt. 34 ¶ 8. Meritage also alleges that AIG has erroneously allocated the Underlying Claims under the various Policies. Meritage seeks these declarations under 28 U.S.C. § 2201:

> (1) The Underlying Claims involve "property damage" as that term is defined in the Policies;
>
> (2) The Underlying Claims were caused by an "Occurrence" as that term is defined in the Policies;
>
> (3) The "property damage" on all Underlying Claims occurred as a result of operative policy language during the final 10/1/17-18 AIG policy period;
>
> (4) By operation of the Single Occurrence Clause ("SOC") Endorsement in the 10/1/17-18 AIG Policy, all Underlying Claims "property damage" constitutes a single "occurrence" and will be deemed to have occurred at some point during the 10/1/08-09 to 10/1/14-15 AIG Policies;
>
> (5) Certain settlements, adverse judgments, arbitrations, and expenses qualify as "Loss" that properly serves to erode the applicable SIR under any AIG Policy at issue;
>
> (6) AIG's indemnity obligations to Meritage are presently and fully triggered under the Policies; and
>
> (7) Coverage for the Underlying Claims exists under one or more AIG Policies.

*Id.* ¶¶ 35-51.

AIG generally denies Meritage's claims. AIG also asserts counterclaims seeking these declarations regarding its obligations under the Policies:

> (1) Policy Nos. BE7412101, 7412210, and 8122058 will involve a separate occurrence that is subject to a separate each occurrence SIR;

3

(2) The close of escrow dates determine which policies will apply to each claim;

(3) All Underlying Claims against Meritage concerning units that closed escrow during the policy period of AIG Specialty Policy No. 8123439 will be a single "occurrence," and all Underlying Claims against Meritage concerning units that closed escrow during the policy period of AIG Specialty Policy No. 8124375 will be a single "occurrence";

(4) All Underlying Claims against Meritage for units that closed escrow during each of the following policy periods will be a single occurrence that is subject to the SIR that applies to each of seven of the Policies;

(5) AIG has no duty to indemnify Meritage under eleven of the Policies because the Self-Insured Retentions for those policies have not been exhausted by payment of "loss"; and

(6) AIG has no duty to defend any "suit" against Meritage that seeks covered damages even when the SIR has been exhausted by payment of "loss."

Dkt. 11 ¶¶ 46-69.

On May 26, 2023, the District Court issued a Scheduling Order ordering discovery to be completed by August 9, 2024, and dispositive motions to be filed by October 4, 2024. Dkt. 19. No dispositive motions have been filed and the case has not been set for trial.

**B. Discovery Dispute**

Meritage has served interrogatories and requests for production on AIG, and has issued subpoenas duces tecum to three of AIG's "current and/or former" insurance brokers seeking underwriting materials and extrinsic evidence of the drafting and interpretation of the Policies. For example, Meritage requests production of: "All correspondence between AIG and any Third Party or Excess Carrier(s) that indicates, references, or relates to the drafting history of the coverage forms used in the AIG Policies" (Request for Production No. 4) and "AIG's Underwriting Files for the AIG Policies" (Request for Production No. 14). Dkt. 25-1. Similarly, Meritage's

4

interrogatories seek the identification of "each person who participated in the issuance, renewal, or underwriting of the AIG Policies" (Interrogatory No. 3) and "each person who participated in negotiations" of the SOC Endorsements (Interrogatory No. 4). Dkt. 25-2. Finally, Meritage's subpoenas to the third-party insurance brokers request production of "all communications" regarding the underwriting, negotiations, and interpretation of the Policies. Dkt. 25-3 at 10, 20, 30.

In its motion, AIG argues that Meritage's discovery requests "seek information that is not relevant or proportional to the needs of the case to the extent that they seek underwriting materials and extrinsic evidence regarding the interpretation of the policies." Dkt. 25 at 3.

## II. Legal Standards

### A. Scope of Discovery

Generally, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In assessing the relevance and proportionality of requested discovery, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Information within the scope of discovery need not be admissible in evidence to be discoverable. *Id.* Information is "relevant" if it "bears on, or [ ] reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party." *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)).

### B. Protective Orders

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending" and the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1).

> The movant bears the burden of showing that a protective order is necessary, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements. A trial court enjoys wide discretion in determining the scope and effect of discovery, and it is therefore unusual to find an abuse of discretion in discovery matters.

*EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (cleaned up).

### C. Quashing or Modifying A Subpoena

Under Rule 45,

> the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

The moving party has the burden of proof to show that compliance with the subpoena would be "unreasonable and oppressive." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citation omitted). Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation. *Id.*

### III. Analysis

This case has ties to both Texas and Florida. Meritage does business in both states. Homeowners have asserted Underlying Claims against Meritage in both states. The Policies were issued by AIG to Meritage in Texas and Arizona. Dkt. 25 at 3.

AIG argues that Texas law applies in this diversity case. AIG contends that under Texas law, "extraneous evidence, such as underwriting information, is not relevant or even discoverable unless the Court finds that the policy provisions at issue in this lawsuit are ambiguous." *Id.* at 6. AIG asks the Court for "entry of a protective order, and that the subpoenas be quashed or modified, at least until the threshold choice of law issue has been resolved" and the Court determines that the Policy provisions are ambiguous. *Id.* at 4, 6.

Meritage argues in response that AIG "is attempting to thwart clearly relevant discovery based on what may or may not be determined to be admissible later, in direct contravention of the Federal Rules' mandate for broad discovery." Dkt. 27 at 1. While Meritage states that it "has not determined" whether Texas or Florida law applies, it contends that "choice-of-law issues are irrelevant" to this dispute. Dkt. 27 at 5. Meritage argues that information "need not be admissible in evidence to be discoverable" under Rule 26(b)(1), and "whether this Court may or may not ultimately admit the requested discovery into evidence is not sufficient grounds to prohibit discovery." *Id.* at 5-6. Thus, Meritage argues that the Court need not wait until it makes a ruling on whether the Policy provisions are ambiguous to permit discovery.

Meritage also argues that AIG lacks standing under Rule 45(d)(3) or Rule 26(c)(1) to object to the Subpoenas served on the third-party brokers. The Court begins its analysis with Meritage's standing argument.

### A. AIG Has Not Shown Standing

Under Rule 45(d)(3), a party generally has standing to challenge a subpoena issued to a non-party if it has a "personal right or privilege with respect to the materials subpoenaed." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). But "[a] party may not challenge a subpoena to a third party on the grounds that the information sought is not relevant or imposes an undue burden."

7

*Harris v. Henry*, No. 1:22-CV-00366-DAE, 2023 WL 5541077, at *3 (W.D. Tex. Aug. 28, 2023) (collecting cases). Because AIG moves to quash the subpoenas to third parties on relevance grounds and undue burden, it lacks standing under Rule 45.

A party may have standing to move for a protective order under Rule 26(c) even if the party lacks standing under Rule 45(d) to bring a motion to quash a third-party subpoena. *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016). But the general rule is that "a party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself." 8A RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE (WRIGHT & MILLER) § 2035 (3d ed. April 2023 Update). While a party "may seek an order if it believes its own interest is jeopardized by discovery sought from a third person," those interests usually are limited to privilege and confidentiality issues. *Id.*

AIG does not explain how its own interest is jeopardized by the discovery sought from the third-party brokers. Accordingly, AIG has not established standing to bring this motion for protective order under Rule 26 as to the third-party brokers.

This Court, moreover, cannot quash a subpoena to out-of-district non-parties under Rule 45(d), which is directed to the court "for the district where compliance is required." For a motion under Rule 45(d), the court or district where compliance is required is determined by the location or place for compliance identified on the subpoena. *Phil. Indem. Ins. Co. v. Odessa Fam. YMCA*, No. MO:19-CV-107-DC, 2020 WL 6484069, at *1 (W.D. Tex. June 26, 2020); *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 709 (N.D. Tex. 2017). While two of the subpoenas at issue here call for production in Austin, Texas, the subpoena served on Burnham Benefits Insurance Services, LLC directs it to produce the requested documents and information at its location in Los Angeles, California. Dkt. 25-3 at 12. The Court has no jurisdiction to rule on this Subpoena.

**B. Texas Law May Permit Consideration of Extrinsic Evidence**

Both parties rely on Texas law in their pleadings and do not dispute that Texas law applies. Because a federal court, sitting in diversity in Texas, applies Texas law in the interpretation of insurance policies, the Court applies Texas law here. *Citigroup Inc. v. Fed. Ins.,* 649 F.3d 367, 371 (5th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Under Texas law, the interpretation of insurance policies is governed by the same rules that apply to the interpretation of other contracts. *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018). "The primary goal of contract construction is to effectuate the parties' intent as expressed in the contract." *Monroe Guar. Ins. Co. v. BITCO Gen. Ins.,* 640 S.W.3d 195, 199 (Tex. 2022).

"An insurer's duty to defend and indemnify are distinct and separate duties." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). An insurer may have a duty to defend a lawsuit but not a duty to indemnify the insured. *Id.* On the other hand, an insurer may not have to defend a lawsuit but eventually may have a duty to indemnify. *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016). These duties can arise independently of one another because the duty to defend is determined by pleadings, but the duty to indemnify is determined by facts established in the underlying lawsuit. *Id.*

Texas courts apply the "eight-corners rule," which "directs courts to determine a liability insurer's duty to defend its insured based on (1) the pleadings against the insured and (2) the terms of the insurance policy." *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 879 (Tex. 2020). Under the eight-corners rule, the insurer's duty to defend is determined by comparing the allegations in the plaintiff's petition to the policy provisions, regardless of the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven. *Monroe*, 640 S.W.3d at 199.

"The rule's name derives from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the plaintiff's pleading." *Id.*

While "[e]xtrinsic evidence or facts outside the pleadings are generally not considered" to determine the duty to defend, this rule "is not absolute." *Id.* In *Monroe*, the Supreme Court of Texas clarified that:

> if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Id.* at 201-02; *see also Richards v. State Farm Lloyds*, 597 S.W.3d 492, 500 (Tex. 2020) (stating that extrinsic evidence is considered by courts where "the petition states a claim that could trigger the duty to defend, but the petition is silent on facts necessary to determine coverage"). In addition, "the parties may offer extrinsic evidence to prove or negate the insurer's *duty to indemnify* if the underlying lawsuit never goes to trial or if trial does not develop the facts necessary to determine policy coverage." *Hartford Cas. Ins.*, 827 F.3d at 430.

A court first must determine that a contract is ambiguous before considering the parties' interpretation and "admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). But "[i]f a latent ambiguity arises from this application, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement." *Id.*; *see also King v. Baylor Univ.*, 46 F.4th 344, 362 (5th Cir. 2022) ("Parol evidence is admissible to elucidate latent contractual ambiguities."). "Even if a contract is unambiguous as a matter of law, a court 'may still consider the surrounding facts and circumstances' as an 'aid in the construction

of the contract's language.'" *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019) (quoting *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017)).

### C. AIG Does Not Meet Its Burden for a Protective Order

AIG argues that it should not have to respond to Meritage's discovery requests because the Court has not ruled whether the Policy is ambiguous. Therefore, AIG contends, underwriting materials and extrinsic evidence of interpretation of the Policies "is not relevant and discoverable" based on the Supreme Court of Texas' holding that a court must first determine that a contract is ambiguous before it "*admit[s]* extraneous evidence to determine the true meaning of the instrument." *Nat'l Union*, 907 S.W.2d at 520.

But the Court is not deciding today whether the underwriting materials and extrinsic evidence should be admitted into evidence; it is merely determining whether such information is discoverable under Rule 26(b)(1). Because the Court has not reviewed the Policies and the parties have yet to make any arguments on ambiguity, the Court cannot determine whether the Policies are ambiguous or unambiguous, or whether ambiguity will even be an issue in this case. That Meritage has not "identified any ambiguity in the AIG [ ] Policies," Dkt. 30 at 3, does not negate the possibility that the Court may find that the Policies are ambiguous because "whether a contract is ambiguous is a question of law to be decided by the Court." *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808 (Tex. 2009). A court may conclude that a contract is ambiguous even in the absence of such pleading by either party. *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993).

In addition, AIG asserts a counterclaim that it does not have a duty to indemnify Meritage under eleven of the Policies. Dkt. 11 at 33-34. As stated, a party may offer extrinsic evidence to prove or negate the insurer's duty to indemnify. *Hartford Cas. Ins.*, 827 F.3d at 430.

For these reasons, the Court finds that Meritage's discovery requests "bear on" or "reasonably could lead to other matters that could bear on, any issue related to the claim or defense." *Leonard*, 38 F.4th at 489. Because AIG fails to sustain its burden to show that Meritage does not seek discovery "relevant to any party's claim or defense" FED. R. CIV. P. 26(b)(1), its motion for protective order is denied.

## IV. Conclusion

Defendant/CounterPlaintiff AIG Specialty's Motion for Protective Order and Alternative Motion to Quash or Modify Subpoenas (Dkt. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable David A. Ezra.

**SIGNED** on January 18, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE