# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| MERITAGE HOMES OF TEXAS, LLC, MERITAGE HOMES OF FLORIDA, INC., and MERITAGE HOMES CORPORATION,<br>　　　*Plaintiffs*<br><br>　　v.<br><br>AIG SPECIALTY INSURANCE COMPANY, f/k/a CHARTIS SPECIALTY INSURANCE COMPANY, f/k/a AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br>　　　*Defendant* | §<br>§<br>§<br>§<br>§<br>§     Case No. 1:22-cv-01375-DAE<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## ORDER

Before the Court are Defendant's Motion to Strike Some of Plaintiffs' Designated Expert Witnesses, filed August 1, 2024 (Dkt. 49), and the associated response and reply briefs; Defendant's Sealed Unopposed Motion for Leave to Keep Exhibits to Motion to Strike Under Seal, filed August 26, 2024 (Dkt. 52); and Plaintiffs' Motion for Leave to File Plaintiffs' Sur-Reply Brief as to Defendant's Motion to Strike, filed September 13, 2024 (Dkt. 56). By Text Orders entered August 8 and September 3, 2024, the District Court referred these motions to this Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

### I. Background

Meritage Homes of Texas, LLC, Meritage Homes of Florida, Inc., and Meritage Homes Corporation (collectively, "Meritage") bring this insurance coverage lawsuit against general

liability insurer AIG Specialty Insurance Company, f/k/a Chartis Specialty Insurance Company, f/k/a American International Specialty Lines Insurance Company ("AIG").[1]

**A. Allegations**

Meritage makes the following allegations in its Second Amended Complaint:

Meritage builds houses and condominiums throughout the United States, including in Texas and Florida. Dkt. 34 ¶ 8. From 2004 to 2018, Meritage carried general liability insurance through twelve commercial umbrella liability policies issued by AIG ("Policies"). *Id.* ¶ 14. The Policies provide coverage for sums in excess of the self-insured retention ("SIR") that the insured becomes legally obligated to pay as damages because of property damage to which the insurance applies. *Id.* ¶ 22. The Policies also contain "Single Occurrence Clause" endorsements, which state:

> one or more accidents arising out of a single act or causes within a community or a series of related acts or causes, regardless of the number of affected communities shall be treated as a single Occurrence and all related . . . Property Damage arising out of such Occurrence shall be deemed to have taken place only at the time at which the first such accident took place.

*Id.* ¶ 24.

Beginning in 2017, several hundred homeowners in Florida sued Meritage, alleging that Meritage negligently installed stucco on the exterior of their houses, violating the Florida Construction Defect Statute. *Id.* ¶¶ 8-9. Homeowners in Texas soon followed, asserting claims under the Texas Residential Construction Liability Act against Meritage based on the allegedly negligently installed stucco. *Id.* ¶ 11. More than 1,100 constructive defect claims

---

[1] Meritage Texas is a limited liability company organized under Arizona law with its principal place of business in Texas. Dkt. 34 ¶ 1. Meritage's sole member, Meritage Homes of Texas Holdings, Inc., is an Arizona corporation. *Id.* Meritage Florida is a Florida corporation with its principal place of business in Arizona. *Id.* ¶ 2. Meritage Corp. is a Maryland corporation with its principal place of business in Arizona. *Id.* ¶ 3. AIG is an Illinois corporation with its principal place of business in New York. *Id.* ¶ 4. Meritage invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332. *Id.* ¶ 5.

("Stucco Claims") have been asserted against Meritage, and the number likely will increase. *Id.* at 13. Meritage alleges that it has settled more than 400 of these claims. *Id.* ¶ 9.

Meritage notified AIG of the claims and sought coverage under the Policies. AIG responded with a series of reservation-of-rights letters, reserving its rights as to several threshold requirements under the SIR provisions in the Policies. These include: (1) satisfaction of the applicable SIR through payment of "loss"; (2) the existence and timing of "property damage"; and (3) the existence and number of "occurrences." *Id.* ¶ 15. AIG contends that it is not clear when the property damage began, and it chose the close of escrow dates on each house to determine which Policies applied to which claims "because this is the earliest date that the 'property damage' could have occurred." *Id.* ¶ 16. Meritage alleges that AIG then "batched" all homes with close-of-escrow dates inside each particular policy period together and treated each grouping as one "occurrence" subject to each respective policy's per "occurrence" SIR. *Id.* ¶ 18. Meritage alleges that AIG then performed an SIR exhaustion analysis by tabulating data regarding payments made by Meritage toward settlement, along with an allowable percentage of defense costs incurred, on the homes with close-of-escrow dates falling within a particular policy period. *Id.* ¶ 19. AIG concluded that the settlements paid by Meritage and allowable defense expenses did not exceed the applicable SIR amount in all but one year. *Id.*

Meritage alleges that AIG's allocation methodology is significantly flawed because it is "buttressed by incorrect factual assumptions and critically ignores clear and unambiguous terms and conditions of the AIG Policies." *Id.* ¶ 20. Meritage contends that all Stucco Claims constitute a single occurrence, and that the property damage relates back to the October 2009 to October 2015 Policies. Meritage also contends that all Stucco Claims made against it are subject to a single per-occurrence SIR contained in the applicable Policy.

## B. Litigation

Meritage filed this suit on December 17, 2022, alleging that AIG breached the insurance contract by refusing to participate in the settlement negotiations and fund any reasonable settlements. *Id.* ¶ 48. Meritage also seeks the following declarations:

(1) the Stucco Claims involve "property damage" under the Policies;

(2) the Stucco Claims were caused by an "Occurrence" as that term is defined in the Policies;

(3) "property damage" occurred during the final "10/1/17-18 AIG policy period";

(4) by operation of the Single Occurrence Clause Endorsement, all "property damage" to homes before October 1, 2018 constitutes a single "occurrence" and will be deemed to have occurred during the Policy period;

(5) settlements of Stucco Claims, adverse judgments or arbitration rulings against Meritage, a certain percentage of fees or expenses to defend any "Suit" qualify as "Loss" under the Policies;

(6) AIG's indemnity obligations to Meritage are triggered under the Policies because through settlements, "Meritage has paid in excess of $11.6 M in 'Loss', which exceeds the applicable SIR contained in any single AIG Policy"; and

(7) coverage for the Stucco Claims "exists under one or more AIG Policies."

*Id.* ¶¶ 36-47.

AIG asserts affirmative defenses of estoppel and waiver and requests its own declarations regarding its obligations under the Policies. AIG seeks declarations that the Policies involve separate occurrences, the close of escrow date determines which policy applies, and it has no duty to defend or indemnify Meritage under the Policies. Dkt. 35.

On June 21, 2024, Meritage designated Gregory Harwell, Mark Boyle, Gregory Zier, and Robert Allen as retained expert witnesses and Robert Gore as a non-retained expert witness under Rule 26(a)(2). Dkt. 43. AIG moves to strike and exclude three of these experts under Federal Rule of Evidence 702. Dkt. 49. AIG also seeks leave to file two exhibits under seal. Dkt. 52. Meritage moves for leave to file a surreply to AIG's response. Dkt. 56.

## II.  Motions for Leave

### A.  Leave to File Surreply

Under Local Rule CV-7, a party may file a surreply only with leave of court. "Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001). District courts permit surreplies only in exceptional or extraordinary circumstances. *Gezu v. Charter Commc'ns*, 17 F.4th 547, 556 (5th Cir. 2021).

> A sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage. When the nonmoving party does not challenge any alleged newly-presented legal theories raised by the movant in its reply, and simply wants an opportunity to continue the argument, a sur-reply is inappropriate.

*Sidbury v. Dun & Bradstreet Emerging Bus. Corp.*, No. 1:19-CV-865-RP, 2020 WL 10758104, at *1 (W.D. Tex. May 27, 2020) (cleaned up).

Meritage seeks leave to file a sur-reply because it "disputes AIG's characterization of Meritage's expert designation of Robert Gore" and seeks "to clarify the details and scope of Robert Gore's designation." Dkt. 56 at 1. Meritage had the opportunity to argue these points in its response brief. Because Meritage identifies no newly raised legal theories or evidence in AIG's reply brief, Meritage's motion for leave is **DENIED**.

### B.  Leave to File Under Seal

"Providing public access to judicial records is the duty and responsibility of the Judicial Branch." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021).

> Judicial records belong to the American people; they are public, not private, documents. And the public's right of access to judicial records is a fundamental element of the rule of law. The public has an interest in transparent court proceedings that is independent of

5

> the parties' interests. This right serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness. Accordingly, we heavily disfavor sealing information placed in the judicial record.

*June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (cleaned up). When a party seeks to file material under seal, district courts must "undertake a case-by-case, 'document-by-document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring nondisclosure'" and explain its sealing decision "at 'a level of detail that will allow for [the Fifth Circuit's] review.'" *Le*, 990 F.3d at 419. "A court errs if it ma[kes] no mention of the presumption in favor of the public's access to judicial records and fails to articulate any reasons that would support sealing." *I F G Port Holdings, LLC v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 410 (5th Cir. 2023) (citation omitted).

AIG requests leave seal Harwell and Boyle's expert reports (Dkts. 52-2 and 52-3). Meritage retained Harwell, a Texas attorney, to opine on the reasonableness of defense costs Meritage incurred in settling and defending the Texas Stucco Claims. Meritage retained Boyle, a Florida attorney, to opine on the reasonableness of Meritage's defense costs in defending and settling the Florida Stucco Claims. Both reports have been designated "Confidential/Privileged Information" under the Court's Confidentiality and Protective Order (Dkt. 40). Dkt. 43 at 2-3. AIG states:

> Counsel for AIG Specialty provided redacted versions of said reports to counsel to Meritage for consideration; however, counsel for Meritage objected to the redacted reports being filed in the public record because, in addition to confidential settlement amounts and discussions of legal and consulting fees that may be redacted, the reports otherwise address strategic issues involved in defending the underlying claims that continue to arise. Thus, Meritage's counsel is concerned that filing the expert reports publicly could prejudice the defense of pending and future underlying claims.

Dkt. 52 at 2.

Contrary to these contentions, most of the information in the expert reports is neither confidential nor privileged. The reports generally summarize the factual background from Meritage's complaint, relevant law, settlement and defense costs, and the experts' opinions on whether those costs were reasonable.

Because the Court finds that redacted reports can be filed in the public record without disclosing Meritage's confidential legal strategies, AIG's motion for leave is **DENIED**. The Court **ORDERS** AIG to confer with Meritage and file unsealed copies of the expert reports, redacting any confidential settlement amounts, names of parties, legal strategies, or other information properly sealed in judicial records.

### III.  Motion to Exclude

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court's landmark case *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Under *Daubert*, Rule 702 charges trial courts to act as "gatekeepers" to ensure expert testimony meets the standards of Rule 702. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). Under *Daubert*, a district court must first "be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179

7

(5th Cir. 2009) (quoting FED. R. EVID. 702). Once the court determines that an expert is qualified, it must ensure that the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Puga v. RCS Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) ("When evaluating expert testimony, the overarching concern is generally whether the testimony is relevant and reliable.").

> To be reliable, expert testimony must be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief. To be relevant, the expert's reasoning or methodology must be properly applied to the facts in issue.
>
> When performing this analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact. Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument. As this court has noted, however, the helpfulness threshold is low: it is principally a matter of relevance.
>
> As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. . . . While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule.

*Puga*, 922 F.3d at 293-94 (cleaned up). A trial court has broad latitude in determining admissibility under Rule 702. *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013).

**A. Robert Gore**

Meritage has designated Gore as a non-retained expert to testify on its general liability insurance program, "including the negotiation, drafting, underwriting, and **interpretation** of the . . . policies AIG issued to Meritage between 2005 to 2018" and "the negotiation, drafting, underwriting, and **interpretation** of the Single Occurrence Clause ('SOC') endorsements attached to the AIG Policies." Dkt. 43 at 8 (emphasis added). Gore was a broker for Meritage "throughout the entire 2005-2018 time period AIG issued Meritage the commercial umbrella liability policies that are the subject of this lawsuit." *Id.* Meritage contends that "Gore has knowledge of the

negotiations that led to the creation and implementation of the Meritage-AIG program" and "is knowledgeable concerning the negotiations surrounding, and drafting of, the manuscripted SOC endorsements attached to the Meritage-AIG policies that Meritage and AIG collaboratively created together," and "is knowledgeable of the parties' goals and intentions for the SOC endorsements." *Id.* at 8-9. Gore is expected to testify:

- Based on his experience, training, and expertise, he is of the opinion that the language of the Single Occurrence Clause Endorsement effectuated the parties' intent and understanding, specifically that Meritage must only satisfy one SIR for one or more claims arising out of a single act or causes within a community or a series of related acts or causes regardless of the number of affected communities, or arising out of the same general harmful conditions;

- Because the stucco system-related claims in Florida and Texas qualify as a single occurrence by operation of the Single Occurrence Clause Endorsement on their face and consistent with the parties' shared intent when negotiated, Meritage is only responsible for one SIR; and

- Concerning his involvement in the only other significant property damage claim presented under the AIG Policies regarding allegedly defective foundations in the Meritage-Castle Hills community in San Antonio, Texas.

Dkt. 43 at 9-10. AIG argues that Gore should be struck as an expert witness because (1) he offers improper legal opinions, and (2) some of his testimony is "mere fact testimony." Dkt. 49 at 7.

### 1. Legal Opinions

Experts may offer their opinions on ultimate issues, but "may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). This is because "our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). "[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). An expert must "bring to the jury more than the lawyers can offer in argument." *Salas*, 980 at 305.

Because interpretation of an insurance policy is a question of law for a court to determine, expert testimony on contract interpretation generally is inadmissible. *Am. Int'l Specialty Lines Ins. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010); *Toccoa Ltd. v. N. Am. Roofing Servs.*, No. 1:21-CV-00313-MJT, 2023 WL 4401545, at *13 (E.D. Tex. June 8, 2023), *R. & R. adopted*, 2023 WL 4106440 (E.D. Tex. June 21, 2023).

Gore's opinions on interpretation of the Polices and the effect of endorsements on the claims are legal conclusions that must be excluded. *See Amica Mut. Ins. v. Moak*, 55 F.3d 1093, 1096 n.5 (5th Cir. 1995) (excluding expert testimony offering interpretation insurance policy and Texas case law because "interpretation of a contract is a question of law for the court"); *Jesus Church of Victoria Texas, Inc. v. Church Mut. Ins.*, 627 F. Supp. 3d 715, 722 n.3 (S.D. Tex. 2022) (finding that expert's testimony on proof of loss was an "impermissible legal conclusion"); *Bradley v. Phillips Chem. Co.*, 484 F. Supp. 2d 604, 613 n. 22 (S.D. Tex. 2007), *aff'd*, 337 F. App'x 397 (5th Cir. 2009) (excluding expert witnesses opinions on meaning and retroactivity of the policy endorsement because as "legal interpretations" of the policy that "invade the judicial function").

Gore may offer testimony as to general customs, standards, and practices in the insurance industry based on his experience in the insurance industry. "Courts routinely allow testimony from experts within the insurance industry to testify about the ordinary practices and usages of the industry, while specifically barring testimony that states a legal conclusion." *Am. Can! v. Arch Ins.*, 597 F. Supp. 3d 1038, 1047 (N.D. Tex. 2022); *see also Beneplace, Inc. v. Pitney Bowes, Inc.*, No. A-15-CV-65-LY-ML, 2016 WL 11582931, at *4 (W.D. Tex. Sept. 20, 2016) (excluding expert's legal conclusions but allowing him to testify as to customs, standards, and practices in the insurance industry relevant to claims).

## 2. Lay Opinions

AIG also argues that Gore should be struck as an expert because his "anticipated testimony regarding his personal knowledge of and involvement in the negotiation, drafting, and underwriting of the relevant policies is not 'expert' testimony. Rather, it is mere fact testimony." Dkt. 49 at 7. This is not grounds to strike Gore as an expert.

First, a witness may may have dual status as both an expert witness and a lay witness. *See, e.g., Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 459 (5th Cir. 1996). Federal Rule of Evidence 701, which governs opinion testimony by lay witnesses, provides that a non-expert witness may testify in the form of opinions or inferences when they are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue. "In particular, the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts." *Nat'l Hisp. Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551 (5th Cir. 2005). But "Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing." *Id.* at 551-52; *see also Texas A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) ("[A]n officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert.").

Gore may testify as to his personal knowledge of the policy negotiations and any other matters of which he has personal knowledge that are relevant to the issues here. *See Newton v. State Farm Lloyds*, No. 4:21-CV-00322-SDJ-CAN, 2022 WL 1217410, at *5 (E.D. Tex. Mar. 31, 2022) (denying motion to exclude factual testimony from an expert witness in insurance case who had personally inspected roof for damage), *R. & R. adopted*, 2022 WL 1214260 (E.D. Tex. Apr. 25, 2022).

AIG's motion to strike Robert Gore is denied in part and granted in part. The motion is **GRANTED** as to Gore's opinions on interpretation of the Polices and the effect of endorsements on the claims and **DENIED** as to general practices in the insurance industry based on his experience and any other relevant matters of which he has personal knowledge.

## B. Gregory Harwell and Mark Boyle

Finally, AIG moves to exclude Harwell and Boyle's opinions on the reasonableness of Meritage's settlements of the Stucco Claims and its defense costs in defending those claims, arguing that it "is unnecessary, unhelpful, and irrelevant to the claims and defenses raised in this lawsuit." Dkt. 49 at 9. AIG argues that the "merits of the underlying Florida and Texas stucco construction defect claims, the reasonableness of settlements of those claims, and the reasonableness of defense costs expended by Meritage in the underlying actions are not issues that have been pleaded." *Id.*

Meritage does not seek specific declaratory relief that the settlements and defense costs were reasonable, but does seek declaratory judgment that settlements of the Stucco Claims qualify as "'Loss' that properly serves to erode the applicable SIR" and that Meritage has paid an amount of "Loss" that exceeds the applicable SIR. Dkt. 34 ¶¶ 45-46. AIG denies this allegation and seeks its own declaration that "it has no present duty to indemnify Meritage under the . . . AIG Specialty policies because the SIRs for said policies have not been exhausted by payment of 'loss.'" Dkt. 38 ¶ 66. Meritage argues:

> In refuting that Stucco System Claims settlements and underlying defense costs constitute "Loss" eroding the applicable SIRs, AIG has arguably reserved its right to challenge the reasonableness of those settlements and defense costs. Meritage offered to take this issue off the table by proposing a joint stipulation that the Stucco System Claims settlements were reasonable and necessary, but AIG refused to enter into such a stipulation.

***

> If AIG is challenging the reasonableness, then there is no basis for striking Harwell or Boyle; if AIG is not, then it should affirmatively say so, thereby making the relief AIG seeks moot.

Dkt. 53 at 8.

The Court agrees with Meritage that the reasonableness of its settlements and defense costs may be relevant to the issue of loss under the Policies. *See* FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); *Daubert*, 509 U.S. at 587 ("The rule's basic standard of relevance thus is a liberal one.").

The Court also finds that the reasonableness of settlements and defense costs may be relevant to Meritage's breach of contract claim and the damages it seeks under that claim. Meritage seeks actual and consequential damages resulting from AIG's failure to pay its defense costs and for "each settlement and judgment that Meritage is forced to fund because of AIG's refusal to do so." Dkt. 34 ¶ 50. *See Ryan L. Firm, LLP v. New York Marine & Gen. Ins.,* No. A-19-CV-629-RP, 2021 WL 828494, at *3 (W.D. Tex. Mar. 3, 2021) (finding that opinions as to reasonableness of settlements were relevant to whether insurance company breached the contract in failing to fund the settlement in the underlying malpractice lawsuit).

Because the Court finds that Harwell and Boyles' testimony is relevant, AIG's Motion to Strike Harwell and Boyle is **DENIED**.

### IV. Conclusion

(1) Defendant AIG's Motion to Strike Some of Plaintiffs' Designated Expert Witnesses (Dkt. 49) is **GRANTED IN PART and DENIED IN PART**. The Court **GRANTS** the Motion to Strike Robert Gore's proposed testimony on conclusions of law and legal interpretations of the Policies but **DENIES** the Motion on all other grounds.

(2) Defendant's Unopposed Motion for Leave to Keep Exhibits to Motion to Strike Under Seal (Dkt. 52) is **DENIED**. The Court **ORDERS** AIG to confer with Meritage and file unsealed copies of the Expert Reports, redacting any confidential settlement amounts, names of parties, legal strategies, or other information properly sealed in judicial records.

(3) Plaintiffs' Motion for Leave to File Plaintiffs' Sur-Reply Brief as to Defendant's Motion to Strike (Dkt. 56) is **DENIED**.

It is **ORDERED** that this case be removed from this Magistrate Judge's docket and returned to the docket of the Honorable David A. Ezra.

**SIGNED** on October 8, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE